UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

QUNJIE YAO,

                                        Petitioner,

                    -v-

JUDITH ALMODOVAR, *in her official capacity as Field Office Director of Enforcement and Removal Operations, New York City, Immigration and Customs Enforcement*, et al.,

                                        Defendants.

---

25 Civ. 9982 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On December 2, 2025, petitioner Qunjie Yao, a noncitizen, was arrested and detained at 26 Federal Plaza in Manhattan by Immigration and Customs Enforcement ("ICE") during a scheduled immigration check-in. He now petitions for a writ of habeas corpus. He claims that ICE, by detaining him without any process, violated his due process rights. For the following reasons, the Court grants the petition and orders Yao's immediate release.

I.      **Background**[1]

        A.      **Yao's Arrival and Residency in the United States**

---

[1] This account draws on the following materials: Yao's petition, Dkt. 1 ("Pet."); the declaration of ICE supervisory detention and deportation officer Nelson Mercado, Dkt. 6 ("Mercado Decl."); a transcript of the hearing the Court held on December 16, 2025 ("Tr."); and exhibits submitted by ICE related to Yao—to wit, a May 3, 2023 arrest warrant, Dkt. 5-1 ("May 3 Warrant"); a May 3, 2023 immigration form, Dkt. 5-2 ("May 3 Form I-213"), a May 3, 2023 notice to appear, Dkt. 5-3 ("NTA"); a May 2, 2023 release order, Dkt. 5-4 ("Release Order"); a May 3, 2023 notice of custody determination, Dkt. 5-5 ("Custody Determination" or "Form I-286"); a December 2, 2025 arrest warrant, Dkt. 5-6 ("December 2 Warrant"); and a December 2, 2025 immigration form, Dkt. 5-7 ("December 2 Form I-213").

Yao, age 55, is a citizen of China. *See* Mercado Decl. ¶ 2. He does not have a known criminal history. December 2 Form I-213 at 3.

On approximately April 30, 2023, Yao illegally entered the United States and was taken into custody by the U.S. Border Patrol, a component of the Department of Homeland Security ("DHS"), near the U.S.–Mexico border in Arizona. *See* Mercado Decl. ¶ 3. On being taken into custody, Yao admitted he was not a U.S. citizen and had entered illegally by crossing the border on foot. May 3 Form I-213 at 3, 5.

On May 3, 2023, DHS ordered Yao released on his own recognizance under 8 U.S.C. § 1226, a provision of the Immigration and Nationality Act ("INA").[2] That day, Yao was served with a notice to appear, which stated that he was subject to removal from the United States under INA § 212(a)(6)(A)(i). Mercado Decl. ¶ 4; *see* NTA at 1. That provision makes a noncitizen present in the United States without admission or parole inadmissible. 8 U.S.C. § 1182(a)(6)(A)(i). The NTA gave a Queens address as Yao's residence and ordered him to appear before an immigration judge at 26 Federal Plaza in Manhattan on October 12, 2023. NTA at 1.

On May 23, 2023, Yao reported to 26 Federal Plaza as required by his release order. Mercado Decl. ¶ 5.

On May 26, 2023, ICE commenced removal proceedings against Yao by filing the NTA in immigration court. *Id.* ¶ 6.

On August 7, 2023, Yao applied for asylum in immigration court. *Id.* ¶ 8; Pet. ¶ 46. On September 27, 2023, that court cancelled the October 12, 2023 hearing. Mercado Decl. ¶ 9.

---

[2] *See* Release Order at 1 (citing INA § 236, *i.e.*, 8 U.S.C. § 1226, as the basis for Yao's release, and directing Yao to report to 26 Federal Plaza in Manhattan on May 23, 2023); Custody Determination at 1 (citing same provision and its implementing regulations).

On October 6, 2023, Yao filed pleadings conceding the factual allegations and charge of removability in the NTA before the immigration court. *Id.* ¶ 10.

On July 9, 2024, December 30, 2024, and July 1, 2025, Yao, as required by the NTA, reported to ICE by email to update his contact information. *Id.* ¶ 7.

Yao's removal proceedings—and asylum petition—are pending. *Id.* ¶ 10; Tr. at 10–12, 31–33. It is undisputed that Yao, since his May 3, 2023 release, has complied with all conditions of release. *See* Tr. at 32–34.

### B. Yao's December 2025 Detention

On December 2, 2025, Yao reported for a scheduled check-in at 26 Federal Plaza. Mercado Decl. ¶ 11. At the check-in, ICE arrested him. *Id.* He was served with an arrest warrant citing INA § 236—*i.e.*, 8 U.S.C. § 1226—as its basis.[3] ICE concedes that, in detaining Yao, it did not exercise discretion or consider his individual circumstances. Tr. at 28–30.

Later that day, after his arrest was processed, Yao's release order was cancelled and he was transferred to Delaney Hall Detention Facility in Newark, New Jersey. Mercado Decl. ¶ 11. ICE has since transferred Yao to New Mexico, where he is held today. Tr. at 29–31.

### C. This Litigation

On December 2, 2025, Yao filed this petition under 28 U.S.C. § 2241. He claims that his ongoing detention, effected that day without notice or an opportunity to be heard, is unlawful. Pet. ¶¶ 49–59. On December 3, 2025, the Court set a briefing schedule. Dkt. 3.[4] On

---

[3] December 2 Warrant at 1 (directing Yao's arrest by "[a]ny immigration officer authorized pursuant to section 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations").

[4] To preserve its jurisdiction, the Court directed ICE not to remove Yao from the United States during the pendency of this action. Dkt. 3 at 1–2.

December 8, 2025, respondents (collectively, "ICE") opposed, Dkt. 7 ("Opp'n"), and filed

supporting documents. *See* note 1, *supra*. On December 9, 2025, Yao replied. Dkt. 8 ("Reply").

On December 16, 2025, the Court held a hearing, at which counsel expanded on facts particular

to Yao, including as to his pending asylum application, and made legal arguments.

## II.     Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the

United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C.

§ 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens

challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 516–17

(2003).

## III.    Discussion

Yao's petition is the latest in a flood challenging the detention of noncitizens under

similar circumstances. These petitions arise from a recent change in ICE enforcement practices,

pursuant to which ICE has widely detained noncitizens, without process, during routine check-

ins. Yao's petition, like these others, presents three questions in sequence.

First, which of two provisions of the INA governs Yao's detention? ICE, abandoning its

real-time characterizations of the basis for Yao's detention, argues that 8 U.S.C. § 1225(b)(2)(A)

applies. That provision generally mandates the detention of the noncitizens it covers. Yao

counters that his detention can only be pursuant to § 1226(a). Under that provision, ICE may

discretionarily detain a noncitizen, but must accord him procedural rights—including, after a

decision to detain, a bond hearing.

Second, if § 1226(a) applies, did ICE's detention of Yao, undertaken without any process or individualized consideration, violate Yao's constitutional right to due process?

Third, assuming a due process violation, is the appropriate relief a bond hearing or immediate release?

In the past four months, more than 160 federal district judges in some 50 districts across the country have addressed these questions in more than 350 cases presenting like facts. The overwhelming majority—including 18 of the 19 identifiable decisions in this District on this point—have found due process violations. This Court finds persuasive, and adopts by reference, the legal reasoning common to these, which it synopsizes below.

The Court accordingly holds as follows. First, Yao was subject to detention pursuant to § 1226(a), which authorizes detention solely on a discretionary, not mandatory, basis. He was not subject to detention under § 1225(b)(2)(A). Second, because Yao's detention under § 1226(a) was imposed without any process, it violated his due process rights. Third, the proper remedy for ICE's constitutional violation is Yao's immediate release. The Court also takes up Yao's bid for reasonable fees and costs under the Equal Access to Justice Act ("EAJA").

## A.  The Statutory Basis for Yao's Detention

The Court finds that Yao has been detained under § 1226—not § 1225. ICE's own documentation, including that which directed Yao's recent detention, uniformly recited § 1226 as the sole basis for ICE to detain him. And there is good reason for that. As set forth below, under the most persuasive construction of the operative statutes, Yao could have been lawfully detained only pursuant to § 1226(a). That construction is supported by the texts of §§ 1225(b) and 1226(a) and the statutory context in which those provisions appear, and is reinforced by the recent amendment of § 1226 by the Laken Riley Act, Pub. L. No. 119-1.

### 1. ICE's Statements as to the Basis for Yao's Detention

Through and including the day Yao was detained, ICE consistently represented to him that his detention (and, before it, his release) was governed by § 1226. On May 3, 2023, when ICE, days after Yao's entry, ordered him released on his own recognizance, it cited § 236 of the INA, codified at 8 U.S.C. § 1226. *See* Release Order at 1; Custody Determination at 1. And on December 2, 2025, nearly 31 months later, when ICE arrested Yao, it cited § 1226 as the sole basis for his detention. *See* December 2 Warrant at 1 (directing Yao's arrest by "[a]ny immigration officer authorized" to do so under the same provision). ICE did not identify any other basis for his detention, let alone state that it believed that Yao's detention was statutorily mandatory.

Only in recent days, in opposing Yao's habeas petition, did ICE abandon this position, and seek to justify Yao's detention under § 1225. *See* Opp'n at 9; Mercado Decl. ¶ 11. A "post hoc rationalization" first articulated in litigation, however, carries little weight. *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (rejecting ICE's position, "adopted post hoc and raised for the first time in this litigation," that petitioner had been detained under § 1225). Indeed, ICE attached to its opposition papers the December 2 arrest warrant stating that Yao had been detained under § 1226, without acknowledging that such contradicts its litigation position.

In these circumstances, ICE is properly held to its representation, when it detained Yao, as to the legal basis for that action. *See, e.g.*, *Esperanza v. Francis*, No. 25 Civ. 8727, 2025 WL 3513983, at *3 (S.D.N.Y. Dec. 8, 2025) (holding that petitioner was detained under § 1226 in part because ICE's forms cited only that provision); *Lopez Benitez*, 795 F. Supp. 3d at 485–86

(same).[5]  "It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Islander E. Pipeline Co. v. Conn. Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983)); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (holding that § 1226 governed petitioner's detention because arrest warrant cited that provision).

## 2.    Construction of §§ 1225 and 1226

Where statutory language is plain, courts "must enforce it according to its terms."  *King v. Burwell*, 576 U.S. 473, 486 (2015).  However, the meaning of "certain words or phrases may only become evident when placed in context."  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).  It is therefore a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).  Statutes need not be drawn with "meticulous specificity" because "language is necessarily marked by a degree of imprecision."  *Thibodeau v. Portuondo*, 486 F.3d 61, 66 (2d Cir. 2007) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).  Thus, even a statute that contains "examples of inartful drafting" does not prevent courts from discerning its meaning, "particularly with the aid of broader statutory context."  *United States v. Epskamp*, 832 F.3d 154, 162–63 (2d Cir. 2016) (quoting *King*, 576 U.S. at 475).

---

[5] *Esperanza* noted that ICE, in a July 2025 memorandum, stated that it henceforth would treat noncitizens present in the United States as subject to detention under § 1225(b)(2)(A), and therefore would no longer issue to them its Form I-286 (Notice of Custody Determination), because that form "applies by its terms only to custody determinations under [§ 1226]."  *See* 2025 WL 3513983, at *3.  ICE, however, issued that very form to Esperanza, *id*.—as it did to Yao.  *See* Custody Determination at 1.

The INA is not optimally pellucid on the point at issue. Careful construction is required and colorable arguments have been made for either outcome, by the parties here and by courts to have considered the question. However, as the vast majority of courts to address the point have held, there is a clearly superior textual analysis. It is that noncitizens such as Yao—who was intercepted at the border, released on his own recognizance pending removal proceedings, and later detained by ICE—are subject to detention under § 1226, not under § 1225. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 491; *J.G.O. v. Francis*, No. 25 Civ. 7233, 2025 WL 3040142, at *2–4 (S.D.N.Y. Oct. 28, 2025); *Villegas ex rel. Guzman Andujar v. Francis*, No. 25 Civ. 9199, 2025 WL 3215597, at *2–4 (S.D.N.Y. Nov. 18, 2025); *Barco Mercado v. Francis*, No. 25 Civ. 6582, 2025 WL 3295903, at *4–7 (S.D.N.Y. Nov. 26, 2025).

To begin, § 1226 unambiguously applies to noncitizens in Yao's circumstances. It authorizes the Attorney General to arrest and detain (or revoke the bond or parole of) noncitizens pending a decision whether they are to be removed from the United States. 8 U.S.C. § 1226(a). It establishes a discretionary framework for arrest, detention, and release. *Id.* The text of that provision clearly covers noncitizens, such as Yao, who earlier entered and are present in the United States. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 490–91; *Villegas*, 2025 WL 3215597, at *2–5; *Esperanza*, 2025 WL 3513983, at *3.

The operative provision of § 1225, within its own four corners, however, presents a more complicated text. Its pertinent part, § 1225(b)(2)(A) states:

> Subject to [exceptions not relevant here], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

As Judge Ho has logically distilled this text, for ICE to detain a noncitizen under § 1225(b)(2)(A), the noncitizen must be (1) an "applicant for admission," (2) who is "seeking

8

admission," and (3) whom an immigration officer determines "is not clearly and beyond a doubt entitled to be admitted." *Lopez Benitez*, 795 F. Supp. 3d at 478–88; *see also Esperanza*, 2025 WL 3513983, at *4. Individuals detained under § 1225(b)(2)(A) are not entitled to a bond hearing, although they can be paroled under limited exceptions for "urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Esperanza*, 2025 WL 3513983, at *5.

Yao qualifies as an "applicant for admission." Section 1225(a)(1) defines that term to mean an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). And "admission," in turn, means "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

A noncitizen in Yao's circumstances, however, is not comfortably said to be "seeking admission." The INA does not define that term. And, as the great majority of courts to consider the point have recognized, not every noncitizen who is an "applicant for admission" is "seeking admission"—these two terms have distinct meanings. *See Tumba Huamani v. Francis*, No. 25 Civ. 8110, 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025) (noting "cardinal rule of statutory interpretation that 'every clause and word of a statute should have meaning'" (quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023))); *see also Esperanza*, 2025 WL 3513983, at *4–5; *Villegas*, 2025 WL 3215597, at *4; *Barco Mercado*, 2025 WL 3295903, at *4–5. The first term merely requires "presence without admission—in other words, it applies to the great number of undocumented immigrants who *currently* live in this country." *Tumba Huamani*, 2025 WL 3079014, at *3 (quoting *J.G.O.*, 2025 WL 3040142, at *3) (emphasis added). The second, "seeking admission," embodies the separate concept that

the noncitizen "*continue* to want to *go into*" the United States. *J.G.O.*, 2025 WL 3040142, at *3. That standard is not ordinarily met by noncitizens who (like Yao) already reside in the United States. As Judge Subramanian has aptly put the point: "[Y]ou can't go into a place where you already are." *Id.*; *see also Barco Mercado*, 2025 WL 3295903, at *5; *Lopez Benitez*, 795 F. Supp. 3d at 488–89; *Esperanza*, 2025 WL 3513983, at *5.

Surrounding language of the statute reinforces that these terms are not synonymous. For one, § 1225 elsewhere refers to "aliens who are applicants for admission *or otherwise seeking admission*." 8 U.S.C. § 1225(a)(3) (emphasis added). Were the two requirements coterminous, that disjunctive formulation would be superfluous. *See, e.g.*, *Tumba Huamani*, 2025 WL 3079014, at *3; *Esperanza*, 2025 WL 3513983, at *4–5; *Villegas*, 2025 WL 3215597, at *4; *Barco Mercado*, 2025 WL 3295903, at *4–5.

Moreover, as courts have widely recognized, §§ 1225 and 1226 are directed to different stages in a noncitizen's interactions with immigration authorities. *See Davis*, 489 U.S. at 809 ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). As these courts have held, reading § 1225(b)(2) in context supports that it applies to noncitizens in the process of arriving in the United States—not to noncitizens in their interactions with ICE after entry (and release). *See, e.g.*, *J.G.O.*, 2025 WL 3040142, at *4; *Lopez Benitez*, 795 F. Supp. 3d at 489–91; *Villegas*, 2025 WL 3215597, at *4. In various respects, § 1225(b)(2) makes textually clear that it governs the "process that occurs when somebody *arrives* in this country." *J.G.O.*, 2025 WL 3040142, at *4 (emphasis in original); *see also Tumba Huamani*, 2025 WL 3079014, at *4; *Gonzalez v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025). Section 1225(b)(2) is titled, "Inspection of other aliens." Its ensuing text covers categories of

noncitizens arriving in the United States, such as "crewmen" and "stowaways." *J.G.O.*, 2025 WL 3040142, at *4 (citing § 1225(b)(2)(B)). And § 1225(b)(2)(C) addresses procedures for noncitizens arriving "from a foreign territory contiguous to the United States."

In contrast, § 1226 "is filled with language that would most clearly apply to people who are already here." *J.G.O.*, 2025 WL 3040142, at *4. For example, § 1226(d)(1) directs the Attorney General to "devise and implement a system" to determine whether individuals arrested for aggravated felonies by federal, state, or local authorities are noncitizens. Similarly, § 1226(c)(1)(e)(ii) directs the Attorney General to detain noncitizens who commit certain criminal offenses. And § 1226(f) confers standing on state attorneys general to bring an action against the Attorney General or DHS Secretary for injunctive relief, where a noncitizen who has been granted release from immigration detention has harmed the state or its residents.

In addressing the distinct contexts in which §§ 1225 and 1226 authorize the detention of a noncitizen, numerous courts have found influential the contrasting focuses of the two provisions. These include the Supreme Court. It has noted that § 1226 "generally governs the process of arresting and detaining [] aliens once inside the United States pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); *see also J.G.O.*, 2025 WL 3040142, at *4 (contrasting § 1226 with § 1225, which governs arrivals); *Esperanza*, 2025 WL 3513983, at *6 (same). The distinct focuses of §§ 1225 and 1226, in turn, track a widely noted distinction running through federal immigration statutes: between "those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Ma v. Barber*, 357 U.S. 185, 187 (1958); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes.").

Viewing these textual cues in combination, § 1226, and not § 1225, is properly read to

apply to aliens such as Yao, who crossed the border long ago and were released, subject to future potential removal. And indeed, that is how DHS—until several months ago—had long understood the two provisions. Its consistent public position had been that § 1226, and not § 1225, applied to aliens who have crossed the border and are later apprehended. *See Savane v. Francis*, No. 25 Civ. 6666, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025). DHS's regulations implementing § 1225—issued months after the statute's enactment—defined the term "arriving alien," which appears in that provision's title, as "an applicant for admission coming or attempting to come into the United States." 8 C.F.R. § 1.2; *see also Goorakani v. Lyons*, 25 Civ. 9456, 2025 WL 3632896, at *9 (S.D.N.Y. Dec. 15, 2025). In 1997, DHS amended those regulations, stating: "Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). Such relief is available under § 1226, not § 1225. And in April 2022, the Solicitor General of the United States, in an argument before the Supreme Court, characterized § 1226(a) as applicable "to aliens who have crossed the border between ports of entry and are shortly thereafter apprehended." *Biden v. Texas*, 597 U.S. 785 (No. 21-954), Tr. Oral Argument 44–45.[6]

The Court thus holds, with the vast majority of district courts to consider the question, that, as a matter of statutory construction and with statutory exceptions not applicable here, § 1225 applies to arriving noncitizens, and § 1226 governs the process of arresting and detaining noncitizens who have entered the United States and remained here pending their removal. *See,*

---

[6] The executive branch's recent abandonment of its historical reading of these INA provisions does not, of course, alter their meaning. *See, e.g.*, *Barco Mercado*, 2025 WL 3295903, at *2; *Villegas*, 2025 WL 3215597, at *4 (collecting cases where courts were "not persuaded by a BIA decision [*i.e.*, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)] that is contrary to the statutory scheme, Supreme Court jurisprudence, and decades of DHS practice").

*e.g.*, *J.G.O.*, 2025 WL 3040142, at *4; *Esperanza*, 2025 WL 3513983, at *5–6; *Tumba Huamani*, 2025 WL 3079014, at *3–4; *Cardenas v. Almodovar*, No. 25 Civ. 9169, 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025).  A noncitizen "cannot be subject to both §§ 1225 and 1226." *Lopez Benitez*, 795 F. Supp. 3d at 485; *see also Villegas*, 2025 WL 3215597, at *2; *Campbell v. Almodovar*, No. 25 Civ. 9509, 2025 WL 3538351, at *1 (S.D.N.Y. Dec. 10, 2025); *Gonzalez*, 2025 WL 2961626, at *4.  Yao is subject to § 1226.

A final, informative data point is supplied by Congress's amendment of § 1226 earlier this year in the Laken Riley Act (the "Act").  *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (codified as amended at 8 U.S.C. § 1226(c)(1)(E)).  As many courts have recognized, the Act reinforces that § 1226, and not § 1225, applies to noncitizens already in the United States.  The Act makes the detention of certain noncitizens *mandatory* if they are charged with, arrested for, convicted of, or admit to having committed certain crimes.  *See id.*; *Tumba Huamani*, 2025 WL 3079014, at *4.  Under the construction of the INA that ICE now urges, however, that amendment would have been unnecessary, because such noncitizens were already subject to mandatory detention under § 1225.  Because ICE's reading would "largely nullify a statute Congress enacted this very year," it "must be rejected."  *Tumba Huamani*, 2025 WL 3079014, at *4 (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.")); *see also J.G.O.*, 2025 WL 3040142, at *4; *Esperanza*, 2025 WL 3513983, at *6; *Cardenas*, 2025 WL 3215573, at *2.

### 3.    ICE's Counterarguments

ICE makes two principal counterarguments.

ICE first invokes *Jennings, supra*. There, the Supreme Court, resolving a different question, held that neither § 1225 nor § 1226 gives detained noncitizens a statutory right to periodic bond hearings. *See* 583 U.S. at 296–97. ICE construes language in *Jennings* to support that all "applicants for admission" fall into one of two categories within § 1225: (1) noncitizens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation, under § 1225(b)(1)(A)(i); and (2) a "broader," "catchall" category under § 1225(b)(2)(A), which "applies to all applicants for admission not covered by § 1225(b)(1)," subject to specific exceptions, and which ICE contends would include Yao. Opp'n at 17 (quoting *Jennings*, 583 U.S. at 287).

ICE misreads *Jennings*. The Court there described immigration law as addressing two fundamental issues: "(1) who may enter the country and (2) who may stay here after entering." *Jennings*, 583 U.S. at 286. The language ICE seizes upon—to support its argument that "all applicants for admission" are covered by either § 1225(b)(1)(A)(i) or (b)(2)(A)—derives from *Jennings*'s discussion of the first: "who may enter the country." That determination, *Jennings* stated, "begins at the Nation's borders and ports of entry." *Id.* at 287. But *Jennings* separately addressed a noncitizen's right to remain "once inside the United States." *Id.* at 288. And as to that step, the Supreme Court stated: "*Section 1226* generally governs the process of arresting and detaining that group of aliens [*i.e.*, those already in the United States] pending their removal." *Id.* (emphasis added). The Court's recognition that § 1226 governs aliens in Yao's situation undermines, rather than supports, ICE's claim that § 1225 governs noncitizens already in the United States, such as Yao.

ICE next invokes the few decisions in its favor, including *Chen v. Almodovar*, 25 Civ. 8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025), the only decision in this District to hold

with ICE that § 1225 applies to noncitizens like Yao who were released and living in the United States.

To the extent that ICE broadly invokes decisions by "other courts around the country," Opp'n at 20, perspective is in order. Numerous district courts have now weighed in on this issue, prompted by ICE's recent reversal of position and consequent enforcement practices. ICE correctly notes nine identifiable decisions that have held with it. But more than 350 decisions— by 160 district judges in some 50 districts—have now rejected ICE's reading. *See Barco Mercado*, 2025 WL 3295903, at *4 (collecting cases). It goes without saying that *ad populum* is not a canon of statutory construction. A statute's proper construction is resolved by its text, to which courts apply tools of construction, as this Court has done above. And the cases are many in which a construction adopted by a minority of lower courts has carried the day at the Supreme Court. But insofar as ICE makes an argument sounding in a headcount, it invites the rebuke that, as to this issue, it is backed by a distinct minority. That is so not only nationwide, but in this District, where *Chen* is the lone outlier.[7]

As to *Chen*, it represents the most developed defense to date of ICE's recent enforcement practices. But this Court, with respect, finds the reasoning above, which aligns with that of the

---

[7] The 18 other decisions in this District to have addressed the issue have all held that § 1226, not § 1225, applies in this context. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d at 483–84; *Tumba*, 2025 WL 3079014, at *5; *Cardenas*, 2025 WL 3215573, at *2; *Esperanza*, 2025 WL 3513983, at *6; *J.G.O.*, 2025 WL 3040142, at *4–5; *Villegas*, 2025 WL 3215597, at *6; *Quispe-Sulcaray v. Noem*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025); *Rueda Torres v. Francis*, No. 25 Civ. 8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025); *Cuy Comes v. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491, at *3–4 (S.D.N.Y. Nov. 14, 2025); *Gonzalez*, 2025 WL 2961626, at *4; *Huang v. Almodovar*, No. 25 Civ. 9346, 2025 WL 3295912, at *3 (S.D.N.Y. Nov. 26, 2025); *Liu v. Almodovar*, No. 25 Civ. 9256, 2025 WL 3458633, at *4 (S.D.N.Y. Dec. 2, 2025); *Romero v. Francis*, No. 25 Civ. 8112, 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025); *Campbell*, 2025 WL 3538351, at *6–9; *Goorakani*, 2025 WL 3632896, at *9; *Perez Agustin v. Francis*, No. 25 Civ. 10122 (S.D.N.Y. Dec. 12, 2025), Dkt. 10.

overwhelming majority of decisions on this point, far more persuasive. *Chen*'s legal analysis, and its critique of this body of authority, is problematic in at least the following four respects.

First, in collapsing the distinction between §§ 1225 and 1226, *Chen* is at odds with the Supreme Court's construction of these provisions. The Court has repeatedly recognized that the INA created separate systems for determining "(1) who may enter the country and (2) who may stay here after entering," and that detention during the latter phase is generally governed by § 1226. *Jennings*, 583 U.S. at 286–88; *see also Ma*, 357 U.S. at 187 (immigration laws "have long made a distinction between" these two categories); *Zadvydas*, 533 U.S. at 693 (similar). *Chen* nevertheless contended that *Jennings* supports that noncitizens who are unlawfully present in this country are subject to § 1225:

> "Section 1226 generally governs the process of arresting and detaining" aliens *pending a determination whether they have a "right to remain here." Jennings*, 583 U.S. at 288. Here, however, Petitioner has been on notice since his arrival in this country that he does not have a right to remain here and is "subject to removal" because, as he concedes, he is an "alien present in the United States without being admitted or paroled."

2025 WL 3484855, at *7 (emphasis added). But *Jennings*, contrary to *Chen*'s premise, did *not* state that § 1226 only applies where the noncitizen is "pending a determination" whether he has a right to remain. To the contrary, the Supreme Court stated: "*Section 1226* generally governs the process of arresting and detaining that group of aliens [*i.e.*, those already in the United States] *pending their removal*." *Jennings*, 583 U.S. at 288 (emphases added). In other words, § 1226 applies to a noncitizen in the United States even after he has been found to be removable.

Second, as to the language of § 1225, *Chen* equated the phrase "seeking admission" with being an "applicant for admission." But, as Judge Ho and many others have persuasively explained, that reading ignores the canon not to render statutory language superfluous. *See, e.g.*, *Goorakani*, 2025 WL 3632896, at *8–9; *Tumba*, 2025 WL 3079014, at *4; *Esperanza*, 2025 WL

3513983, at *4–5.  The ordinary meaning of "seeking admission" differs from "applicant for admission," a term of art expressly defined by the INA.  *See Lopez Benitez*, 795 F. Supp. 3d at 488–89.  "Seeking admission" naturally refers to noncitizens entering or attempting to enter the country.  *Goorakani*, 2025 WL 3632896, at *8.

Third, *Chen* concluded that a noncitizen pursuing an application for asylum is "seeking admission" within the meaning of that § 1225 term—such that an asylum applicant like Yao, regardless of how long he has been in the United States following entry, continues to be subject to § 1225.  That, however, ignores the ordinary meaning of "seeking admission," as explained above.  It also ignores that Congress has pointedly distinguished between the "admission" of a noncitizen and the decision to grant a noncitizen asylum.  Section 1225 defines "admission" as "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Asylum is not decided at that juncture.  Nor is it decided by ICE.[8]  And a later decision to grant asylum does not retroactively make the noncitizen's earlier entry "lawful," or constitute "inspection and authorization" in connection with that entry.  Granting asylum instead protects a noncitizen, notwithstanding his earlier illegal entry, from later removal.  And in the INA, Congress expressly decoupled the concepts of removability and asylum.  *See, e.g.*, *id.* § 1158(a)(1) (a noncitizen may apply for asylum "irrespective of such alien's status").  In eliding asylum with "admission," *Chen* thus blurred two distinct legal concepts.  *See, e.g.*, *Matter of V-X-*, 26 I. & N. Dec. 147, 150–52 (BIA 2013) (grant of asylum was not "admission" under § 1101(a)(13)(A)); *accord Lopez Benitez*, 795 F. Supp. 3d

_____

[8] *See* 8 C.F.R. § 208.2(a)–(b) (asylum applications decided by U.S. Citizenship and Immigration Services (USCIS) or immigration judges).  Here, Yao applied for asylum to an immigration judge within the Executive Office for Immigration Review (EOIR).  Pet. at 22 (cover page of Form I-589).  Both sets of entities are distinct from ICE.

at 498–99 (petitioner sought asylum but was not "seeking admission" under § 1225); *J.G.O.*, 2025 WL 3040142, at *1 (same); *Tumba Huamani*, 2025 WL 3079014, at *1 (same); *Esperanza*, 2025 WL 3513983, at *2 (same).

Fourth, *Chen* argued that the Laken Riley Act cannot undercut ICE's construction of § 1225 because that law "clearly was enacted to strengthen immigration enforcement." 2025 WL 3484855, at *6. The act's legislative history, *Chen* stated, shows that "many members of Congress thought it necessary to enact a new law mandating detention in more circumstances." *Id.* (citation omitted). *Chen*'s interpretive methodology, however, is at odds with modern-day principles of statutory construction. A foundational tenet of such is that the purpose of a statute as derived from the statements of legislators *cannot* override its plain text. *See, e.g.*, *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 111 (1991) (Scalia, J.) (contention that a statute's overarching purpose "must prevail over the ordinary meaning of the statutory terms" "profoundly mistakes [the judicial] role"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (Thomas, J.) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *see also* John F. Manning, *Textualism and the Equity of the Statute*, 101 Colum. L. Rev. 1, 6–7 (2001) (recounting 20th-century shift from "strong purposivism" to textualism). And as courts have widely held, the text of the Laken Riley Act reinforces that § 1225 does *not* apply to noncitizens whom ICE detains anew after their entry and release. *See, e.g.*, *Tumba Huamani*, 2025 WL 3079014, at *4; *Barco Mercado*, 2025 WL 3295903, at *6; *Esperanza*, 2025 WL 3513983, at *6.

### 4.      Overall Assessment

For the reasons above, Yao's detention is governed by § 1226, not § 1225.  He qualifies as an "applicant for admission" because he is a noncitizen "present in the United States who has not been admitted," *i.e.*, he has not been duly authorized to remain in the United States.  *See* 8 U.S.C. § 1225(a)(1); *id.* § 1101(a)(13)(A).  But Yao cannot be said to be "seeking admission" to—*i.e.*, trying to enter—the United States, because he already resides in this country, and had lived here for more than two years between his 2023 release by ICE and his detention this month.

Yao's pending asylum application does not change this result.  He is not "seeking admission" via that application.  A grant of asylum is not "admission."  *See, e.g.*, *V-X-*, 26 I. & N. Dec. at 150–52.  And a grant of asylum would not render Yao's earlier entry "lawful," or constitute "inspection and authorization" in connection with that entry.  *See id.*; *see generally* 8 U.S.C. § 1158.

The Court, therefore, applying familiar tenets of construction, holds that noncitizens in Yao's circumstances—intercepted at the border, released on their own recognizance pending removal, and later detained by ICE—are covered by § 1226, not by the mandatory detention scheme of § 1225.  *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 498–99; *J.G.O.*, 2025 WL 3040142, at *1; *Barco Mercado*, 2025 WL 3295903, at *10 (S.D.N.Y. Nov. 26, 2025), *Tumba Huamani*, 2025 WL 3079014, at *5–6; *Esperanza*, 2025 WL 3513983, at *6.

### B.      Due Process

The Court next addresses whether Yao's detention, effected without any process or exercise of discretion in violation of § 1226, violated his due process rights.

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent."  *Velasco Lopez v. Decker*, 978

F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas*, 533 U.S. at 693). ICE has discretion in determining whether to detain a noncitizen under § 1226, but due process "still requires that such discretion actually be exercised—*i.e.*, that some determination actually be made." *Tumba Huamani*, 2025 WL 3079014, at *7.

Here, as in many other cases resolved in this District and elsewhere in the past four months, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Yao. *Lopez Benitez*, 795 F. Supp. 3d at 494 (emphasis in original). ICE in fact acknowledges that it did not do so. Tr. at 28–30. And, as ICE further acknowledges, to comport with due process, it was required to follow the procedures set by Congress to govern Yao's detention—here, those set by § 1226. Opp'n at 23 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). ICE concedes that it instead detained Yao as a matter of reflex.

These procedural protections matter. They are not mere technicalities. On the limited record at hand, Yao had substantial arguments, under § 1226, against his detention, had he been given an opportunity to make them to an open-minded decisionmaker exercising discretion. Among these: He is age 55. He is gainfully employed. He does not have a criminal history. He has not violated any term of his conditional release. ICE concedes that he is not a flight risk, nor a danger to the community. Tr. at 12–14, 28–34. And Yao has an asylum application pending before an immigration judge that is facially credible. *See* Mercado Decl. ¶ 9; Pet. ¶ 46. As his counsel represented at yesterday's hearing, Yao there claims to have fled China—leaving his wife and child behind—after being imprisoned for 15 days and beaten, on account of his embrace of Christianity. He claims to fear retribution if returned to China. Tr. at 5–11.

If Yao's asylum application were granted, on these bases or perhaps others, such would block his removal. Yet Yao's December 2 arrest—effected without notice, an opportunity to be

heard, an individualized assessment of his circumstances, or any exercise of discretion by ICE—made it impossible for him to raise any of these arguments.

The Court cannot forecast how immigration authorities would have exercised their discretion, had Yao received the process he was due. But, on the above record, it is plausible that, had ICE faithfully applied § 1226, it would have decided not to detain Yao. It is likewise plausible that, even had ICE decided otherwise, an immigration judge thereafter would have released Yao on bond. *See Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896, at *23–24 (S.D.N.Y. Nov. 24, 2025) (due process violation, consisting of denial of notice and right to be heard following detention during 26 Federal Plaza check-in, denied petitioner opportunity to make substantial arguments against detention and removal).

Consistent with the vast majority of other courts to consider this question, including the 18 cases in this District to find a due process violation under like circumstances, the Court finds that ICE's discretion-free detention of Yao abridged his rights under § 1226 and violated due process. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 496 (detention of petitioner under § 1226, without notice or opportunity to respond, violated due process); *Tumba Huamani*, 2025 WL 3079014, at *6–7 (same); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (same); *Barco Mercado*, 2025 WL 3295903, at *11–12 (same); *Esperanza*, 2025 WL 3513983, at *7–8 (same).

### C.     Remedy

The Court next turns to the appropriate remedy for ICE's violation of due process.

On this point, the Court finds persuasive Judge Liman's analysis in *Tumba Huamani*, *supra*. He held that the petitioner had been unlawfully detained under § 1226, in violation of due process, and ordered her release, rather than a bond hearing. 2025 WL 3079014, at *7–9. Judge

Liman reasoned that, had the petitioner's initial detention accorded with due process, she would have been entitled to a bond hearing. *Id.* But, he explained, a bond hearing could not retrospectively cure the due process violation, which derived from her unlawful arrest and detention without the statutorily required exercise of discretion. *Id.* And, under INA regulations, a bond hearing occurs only after ICE has made its "initial [discretionary] decision to detain"—it is not itself an initial custody determination but an act of "*re*-determination." *Id.* (quoting *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing 8 C.F.R. § 236.1(d)(1))).

The same reasoning applies here. ICE violated Yao's due process rights by arresting and detaining him under § 1226 without any exercise of discretion. A bond hearing after the fact, by definition, would not and cannot cure that constitutional violation. Although Yao's release today cannot cure his loss of liberty since December 2, this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so.[9]

The Court, accordingly, and again consistent with peer courts, orders Yao's immediate release. *See, e.g.*, *Tumba Huamani*, 2025 WL 3079014, at *7–9 (ordering immediate release from detention under § 1226 that violated due process); *Lopez Benitez*, 795 F. Supp. 3d at 497–

---

[9] ICE's suggestion that Yao, in filing this action, failed to first exhaust his administrative remedies, Opp'n at 28–31, is highly unpersuasive. ICE does not identify an administrative avenue that Yao, following his unannounced detention, plausibly should have pursued before filing suit. Moreover, "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention." *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014). And a failure to exhaust is excusable where: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). Such is the case here. Yao, at a minimum, has raised a "substantial constitutional question." *Esperanza*, 2025 WL 3513983, at *8; *see also Lopez Benitez*, 795 F. Supp. 3d at 496; *Villegas*, 2025 WL 3215597, at *8. And, as Judge Abrams has recognized, a failure to exhaust administrative remedies before ICE "would be futile in light of ICE's position that § 1225(b)(2)(A) applies" and the BIA's decision upholding that position. *See Esperanza*, 2025 WL 3513983, at *9 (citing *Yajure Hurtado*, 29 I. & N. Dec. 216).

98 (same); *Chipantiza-Sisalema*, 2025 WL 1927931, at *3–4 (same); *Cardenas*, 2025 WL 3215573, at *3–4 (same); *Esperanza*, 2025 WL 3513983, at *8–9 (same); *Barco Mercado*, 2025 WL 3295903, at *12–13 (same); *Rueda Torres v. Francis*, No. 25 Civ. 8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025) (same); *Quispe-Sulcaray v. Noem*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025) (same); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025) (same); *Cuy Comes v. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491, at *6 (S.D.N.Y. Nov. 14, 2025) (same); *Gonzalez*, 2025 WL 2961626, at *5 (same); *Huang v. Almodovar*, No. 25 Civ. 9346, 2025 WL 3295912, at *3–4 (S.D.N.Y. Nov. 26, 2025) (same); *Liu v. Almodovar*, No. 25 Civ. 9256, 2025 WL 3458633, at *5–6 (S.D.N.Y. Dec. 2, 2025) (same); *Campbell*, 2025 WL 3538351, at *12–13 (same); *Goorakani*, 2025 WL 3632896, at *8 (S.D.N.Y. Dec. 15, 2025) (same).[10]

### D. Fees Under the Equal Access to Justice Act

Yao, finally, seeks prevailing-party fees under the EAJA, 28 U.S.C. § 2412. ICE's brief did not address this point.

Under the EAJA, a court "shall" award a "prevailing party" reasonable fees and expenses incurred in a civil action against the United States unless the court finds that "the position of the United States was substantially justified." 28 U.S.C § 2412(d)(1)(A). "A party prevails if the court grants relief to the party based on an assessment of the merits and thus unquestionably and materially alters the existing legal relationship between the parties." *Esperanza*, 2025 WL 3513983, at *9 (quoting *Barco Mercado*, 2025 WL 3295903, at *13) (cleaned up). Habeas

---

[10] In light of this ruling, the Court does not have occasion to reach Yao's alternative argument: that he is eligible for a bond review under an order affording such relief to a nationwide class, issued in *Maldonado Bautista v. Santacruz*, No. 25 Civ. 1873 (C.D. Cal. Nov. 25, 2025).

petitions challenging immigration detention are civil actions within the meaning of the EAJA. *Barco Mercado*, 2025 WL 3295903, at *13.

Here, Yao is the prevailing party, and ICE's position, rejected this year in some 97% of the cases in which it was litigated, was not substantially justified. Yao is thus entitled to reasonable fees and costs. *See, e.g.*, *id.*; *Esperanza*, 2025 WL 3513983, at *9.

## CONCLUSION

For the above reasons, the Court grants the petition for a writ of habeas corpus.

ICE is hereby ordered to transport Yao back to this District forthwith, and immediately thereafter to release Yao from custody. ICE shall certify compliance with the Court's order by filing an entry on the docket of this case no later than 5 p.m. on Thursday, December 18, 2025.

As for reasonable fees and costs under the EAJA, Yao may file documentation of such on the docket by January 9, 2026. If he does, ICE shall respond by January 16, 2025.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 17, 2025
New York, New York